UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| SCOTT H., <br><br> Plaintiff, <br><br> v. <br><br> ANDREW SAUL, Commissioner of Social Security, <br><br> Defendant. | Case No. 20-cv-847 (HB) <br><br><br> **ORDER** |

HILDY BOWBEER, United States Magistrate Judge[1]

Pursuant to 42 U.S.C. § 405(g), Plaintiff Scott H. seeks judicial review of a final decision by the Commissioner of Social Security denying his application for supplemental security income (SSI) and disability insurance benefits (DIB). The matter is now before the Court on the parties' cross-motions for summary judgment [ECF Nos. 22, 24]. For the reasons set forth below, the Court denies Plaintiff's motion for summary judgment and grants the Commissioner's motion for summary judgment.

**I.    Background**

On November 18, 2016, and April 11, 2017, Plaintiff applied for DIB and SSI under Titles II and XVI of the Social Security Act, respectively. (Soc. Sec. Admin. R. (hereafter "R.") 293–305 [ECF No. 15].) In both applications, Plaintiff alleged disability beginning October 1, 2016. (R. 293, 299.) He identified the following conditions as

---

[1] The parties have consented to have a United States Magistrate Judge conduct all proceedings in this case, including the entry of final judgment.

limiting his ability to work: sacroiliac (SI) joint disfunction, degenerative disc disease, chronic pain, arthritis, and depression/anxiety. (R. 329.)

Plaintiff's application was denied initially and on reconsideration, and he timely requested a hearing before an administrative law judge (ALJ). (R. 11.) The ALJ convened a hearing at which Plaintiff, a medical expert, and a vocational expert testified. (R. 11.) At the time Plaintiff was represented by counsel (R. 11), although he now appears before the Court pro se.

On May 14, 2019, the ALJ issued a written decision denying Plaintiff's application. (R. 8–41.) Following the five-step sequential analysis outlined in 20 C.F.R. §§ 416.920(a), 404.1520(a), the ALJ first determined Plaintiff had not engaged in substantial gainful activity since the alleged onset date. (R. 13.) At step two, the ALJ determined Plaintiff had the following severe impairments: major depressive disorder, generalized anxiety disorder, history of attention deficit hyperactivity disorder (ADHD), panic disorder, chronic pain syndrome, lumbar degenerative disc disease and sacroiliac joint disease with osteoarthritis, mass cell activation disorder (seronegative), chronic Lyme disease (seronegative) versus mass cell activation disorder (seronegative) treated with herbal medicine and medical marijuana, and obesity. (R. 13–14.) The ALJ found at the third step that the impairments did not meet or equal the severity of an impairment listed in 20 C.F.R. part 404, subpart P, appendix 1. (R. 14–23.)

At step four, the ALJ assessed Plaintiff's residual functional capacity (RFC). (R. 23–39.) As part of that assessment, the ALJ determined that Plaintiff's impairments could reasonably be expected to cause the alleged symptoms, but found that Plaintiff's

statements about the intensity, persistence, and limiting effects of the impairments were "not entirely consistent with the medical evidence and other evidence in the record." (R. 24.) The ALJ reviewed Plaintiff's treatment history and analyzed and assigned evidentiary weight to the opinions of medical professionals who opined on Plaintiff's condition. (R. 23–39.) The ALJ ultimately found Plaintiff retained the RFC to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a), 416.967(a), with the following additional restrictions: Plaintiff may never climb ropes, ladders, or scaffolds; occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; frequently operate foot controls; and no exposure to extreme cold, vibration, unprotected heights, or hazards. (R. 23.) The ALJ further limited Plaintiff to "simple routine tasks" with only "occasional superficial contact with supervisors, coworkers, and members of the public." (R. 23.)

The ALJ found that Plaintiff would be unable to perform any past relevant work, but concluded, based on Plaintiff's age, education, work experience, and RFC, that there are jobs that exist in significant numbers in the national economy that Plaintiff could perform. (R. 39–40.) Accordingly, the ALJ determined Plaintiff was not disabled. (R. 41.)

The Social Security Administration (SSA) Appeals Council denied Plaintiff's request for review, which made the ALJ's decision the final decision of the Commissioner. (R. 1.) Plaintiff then filed this action for judicial review.

Plaintiff argues the ALJ made several errors in reaching this determination. (Pl.'s Mem. Supp. Mot. Summ. J. at 1 [ECF No. 23].) First, Plaintiff contends the ALJ failed

3

to fully and fairly develop the factual record by failing to address Plaintiff's chronic fatigue syndrome. Plaintiff specifically faults the ALJ for not referring to Social Security Ruling (SSR) 14-1p, 2014 WL 1371245 (Apr. 3, 2014), which Plaintiff argues provides the correct "framework" for assessing chronic fatigue syndrome as it relates to the Step Three and Step Four analysis. (*Id.* at 2–10.) Second, Plaintiff argues the ALJ erred at Step Three when he concluded that none of Plaintiff's impairments met the criteria for a listed impairment. (*Id.* at 10–11.) Finally, Plaintiff argues the ALJ erroneously assigned little weight to the medical opinion of Dr. Laurie Radovsky, M.D., Plaintiff's treating physician, and incorrectly misrepresented that Plaintiff's treatment history with Dr. Radovsky had been "brief." (*Id.* at 11–13.)

The Court has reviewed the entire administrative record, giving particular attention to the facts and records cited in the parties' memoranda. The Court will incorporate the facts of record only to the extent they are helpful for context or necessary for resolution of the specific issues presented in the parties' motions.

## II.   Standard of Review

Judicial review of the SSA's denial of benefits is limited to determining whether substantial evidence on the record supports the decision. 42 U.S.C. § 405(g). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002) (citing *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000)). The Court must examine "evidence that detracts from the Commissioner's decision as well as evidence that supports it." *Id.* (citing *Craig v. Apfel*,

212 F.3d 433, 436 (8th Cir. 2000)).  The Court may not reverse the ALJ's decision simply because substantial evidence would support a different outcome, or the Court would have decided the case differently.  *Id.* (citing *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993)).  In other words, if it is possible to reach two inconsistent positions from the evidence, and one of those positions is that of the Commissioner, the Court must affirm the decision.  *Robinson v. Sullivan*, 956 F.2d 836, 838 (8th Cir. 1992).

A claimant has the burden to prove his disability.  *See Roth v. Shalala*, 45 F.3d 279, 282 (8th Cir. 1995).  To be considered disabled, the claimant must establish that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 1382c(a)(3)(A); 423(d)(1)(A).  The disability, not just the impairment, must have lasted or be expected to last for at least twelve months. *Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993).

## III. Discussion

### A. Chronic Fatigue and SSR 14-1p

Plaintiff's first argument is that the ALJ failed to fully and fairly develop the record because he did not comment on whether Plaintiff suffered from chronic fatigue syndrome (hereafter CFS) (Pl.'s Mem. Supp. Mot. Summ. J. at 2), and specifically did not address the "postexertional malaise" Plaintiff experiences as a result of CFS (*id.* at 4; Pl.'s Reply at 4 [ECF No. 27]).  The ALJ did not make any findings related to CFS, although he did refer to certain of Plaintiff's symptoms that are consistent with that

diagnosis. (*E.g.*, R. 17 ("[T]he claimant had continued to report brain fog, fatigue, and chronic pain. . . ."); R. 21 ("[Plaintiff] did not mention significant anxiety or depression, episodes of fogginess, low energy, or extreme fatigue."); R. 26 ("He began to report longstanding fatigue, tension headaches, jaw pain. . . ."); R. 27 ("He reported 'brain fog' with extreme fatigue and confusion. . . ."); R. 28 ("He reported joint pain, hand pain, and chronic fatigue. . . .").) Plaintiff argues this omission is significant, since acknowledging Plaintiff's CFS should have triggered the analysis laid out in SSR 14-1p.

The Court disagrees. First, the record reflects that Plaintiff did not allege CFS as a disabling impairment at the administrative levels. In the Disability Report of his initial application, Plaintiff stated he suffered from SI joint dysfunction, degenerative disc disease, chronic pain, arthritis, and depression/anxiety, but not CFS. (R. 329.) Then at the reconsideration level, in his Disability Report–Appeal, Plaintiff was asked to address whether he was experiencing any new medical conditions and he stated "yes," that he had recently been diagnosed with generalized anxiety disorder with panic attacks. (R. 363.) Plaintiff also stated that his "fatigue, pain, and brain fog [had] gotten much worse," but did not identify these as aspects of CFS. (R. 363.) At the hearing level, Plaintiff again completed a Disability Report–Appeal and reported on his medical conditions. This time when asked about new diagnoses, he stated he had had a positive test for Epstein Barr virus and had been diagnosed with chronic late-stage Lyme disease. (R. 390.) He also indicated that he was experiencing tremors, struggled to communicate, and had very bad brain fog. (R. 390.) Finally, at his hearing before the ALJ on April 11, 2019, Plaintiff testified that he spends 20 to 22 hours a day in bed, but related it primarily to chronic

pain, saying that sitting longer than 15 minutes will "aggravate it." (R. 79.) When asked what kept him in bed, Plaintiff responded that "[t]he chronic pain is probably the worst," but also identified "neurological stuff," social anxiety, depression, and fatigue/lack of energy as contributing factors. (R. 86.) When his representative specifically asked him to describe his overall level of energy or fatigue on a daily basis, Plaintiff referenced pain complaints and stated that on days when his pain medication "has worked really well and the pain goes down significantly" he is able to get up and move around. (R. 85.)

Furthermore, the record does not reflect that Plaintiff was ever diagnosed with CFS. Although various of Plaintiff's medical records document that he experienced "chronic fatigue," they do not attribute that symptom to chronic fatigue syndrome. In fact, several records are clear that the source of Plaintiff's fatigue was unknown or was possibly attributable to something *other than* CFS. For example, on July 27, 2017, Dr. Kathleen Watson saw Plaintiff and commented that Plaintiff's "chronic fatigue is likely multifactorial with insomnia in the context of poor sleep hygiene, polypharmacy with multiple sedating medications, sedentary behavior, and anxiety and depression." (R. 867.) Plaintiff saw Dr. Watson again a year later, on August 21, 2018. (R. 1240.) At that appointment Dr. Watson noted that Plaintiff stated he had seen several specialists for treatment of his fatigue and related symptoms, but "no clear cause has been found." (R. 1240.) Dr. Watson later concluded in that same note that Plaintiff had "multiple somatic complaints, many with no anatomical and physiological basis" and stated that she "strongly suspect[ed] somatization disorder." (R. 1245.) Two months prior, on June 11, 2018, Plaintiff saw Dr. Susan Kline for follow-up on his lumbar puncture results and

7

complaints of chronic fatigue, intermittent vertigo, and ongoing brain fog. (R. 1273.) Dr. Kline commented that the chronic fatigue was "of unclear etiology." (R. 1274.)

Plaintiff acknowledges that a CFS diagnosis was not "consistently explicit in evidence submitted by [his] medical providers." (Pl.'s Mem. Supp. Mot. Summ. J. at 2.) However, he argues that the "evidence as a whole . . . supports a diagnosis of CFS." (*Id.* at 9–10.) That is, Plaintiff essentially argues that the ALJ should have *deduced* that Plaintiff had CFS and determined Plaintiff's limitations based on that deduction. But as the claimant, Plaintiff bears the burden of presenting his disabling conditions to the ALJ; it is not the ALJ's job to make Plaintiff's claims for him. The record is clear that Plaintiff did not allege CFS in his application for benefits or during the hearing, and sporadic references to fatigue—even "chronic fatigue"—or low energy levels are not sufficient to present a claim for CFS to the ALJ as a basis for disability. The ALJ was under "no obligation to investigate a claim not presented at the time of the application for benefits and not offered at the hearing as a basis for disability." *Pena v. Chater*, 76 F.3d 906, 909 (8th Cir. 1996) (*quoting Brockman v. Sullivan,* 987 F.2d 1344, 1348 (8th Cir.1993)); *see also Anderson v. Barnhart*, 344 F.3d 809, 814 (8th Cir. 2003) (finding that because the plaintiff never alleged any limitation as a result of his obesity in either his application or during the hearing, the claim is waived from being raised on appeal). An ALJ is also not required to order further medical examination of a claimant whose impairment is not alleged and there is only "minimal evidence in the record" to support such a finding. *Matthews v. Bowen*, 879 F.2d 422, 425 (8th Cir. 1989) (concluding that the district court did not err in not ordering a consultative exam to evaluate the claimant's anxiety where

8

the only record evidence supporting such a diagnosis was the plaintiff's testimony that she suffered from "nerves" and had a prescription for an anti-depressant medication). Because Plaintiff did not present a claim for CFS in his application or during the hearing, this claim is waived and cannot be raised now. *Anderson*, 344 F.3d at 814.

Moreover, even if that were not the case, Plaintiff is mistaken about the function of SSR 14-1p. Plaintiff argues that "SSR 14-1p provides the correct framework for evaluating [his] residual functional capacity," such that "organizing the evidence according to the criteria defined in the regulation shows the interrelationship of symptoms that the ALJ and Dr. Franzen (sic) discuss in isolation." (Pl.'s Mem. Supp. Mot. Summ. J. at 4.) Plaintiff argues that the record, when "viewed through the proper framework of SSR 14-1p, supports a diagnosis of CFS, which in turn lends credibility to [his] reports of extreme postexertional malaise. . . ." (*Id.* at 9–10.) In his Reply, Plaintiff argues that the ALJ's failure to comment on evidence of post-exertional malaise, "let alone proactively develop the record by requesting an independent medical assessment, is . . . unjust and detrimental to [his] welfare." (Pl.'s Reply at 4.)

The Social Security Ruling (SSR) provides guidance and clarity as to how a claimant can establish—and an adjudicator can conclude—that the claimant has medically determinable CFS. 2014 WL 1371245, at *2. Although SSR 14-1p identifies the diagnostic symptoms of CFS, an adjudicator cannot infer a diagnosis of CFS merely from the presence of those symptoms. On the contrary, the ruling is clear that the way a person can establish that he or she has a medically determinable impairment of CFS is "by providing appropriate evidence" from a licensed physician. *Id.* at *4. More

importantly, Plaintiff is not correct that SSR 14-1p establishes a different framework for evaluating whether a claimant is disabled as a result of CFS. Instead, SSR 14-1p specifically provides that the SSA will use the same sequential evaluation process it uses to evaluate any other impairment. *Id.* at *7–8. In short, SSR 14-1p requires no further or different analysis than what the ALJ already employed here.

### B. The ALJ's Analysis at Step Three

Plaintiff next argues the ALJ erred at Step Three when he failed to "develop evidence for or comment on any equivalence to comparable listed impairments." (Pl.'s Mem. Supp. Mot. Summ. J. at 10.) Plaintiff clarifies that he believes this error prevented him from having sufficient information on which to challenge the ALJ's decision. (Pl.'s Reply at 4.)

At Step Three of the five-step sequential process it is the ALJ's job to make a medical assessment to determine whether one or more of the claimant's impairments meet a listing in the Listing of Impairments in 20 CFR part 404, subpart P, Appendix 1. If the ALJ determines the claimant's impairment meets the criteria for a listing, the claimant is automatically determined to be disabled; if not, the ALJ continues with his analysis. 20 CFR §§ 404.1520(a), 416.920(a). In either case, the ALJ is still required to consider all evidence in making a finding at Step Three. SSR 17-2p, 2017 WL 3928306, *4 (Mar. 27, 2017).

If the ALJ concludes that the evidence does not support a finding that the impairment(s) medically equal a listed impairment, he is not required to articulate specific evidence supporting that conclusion. *Id.* In fact, simply stating that the

impairment does not equal a listing is generally sufficient.  *Id.*  Because an adverse decision at Step Three simply triggers the remainder of the five-step process, the ALJ's assessment of the evidence will be discussed later in the analysis.  "An adjudicator's articulation of the reason(s) why the individual is or is not disabled at a later step in the sequential evaluation process will provide rationale that is sufficient for a subsequent reviewer or court to determine the basis for the finding about medical equivalence at step 3."  *Id.*

Here, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.  (R. 14.)  He explained that conclusion, then proceeded with the rest of his analysis.  (R. 14–22.)  The ALJ was not required to give a more robust analysis at Step Three than he provided.  Indeed, in the Court's experience with social security cases, the Court finds the ALJ's assessment at both Step Three and Step Four to have been relatively more detailed than is typical.  The ALJ was not required to further develop evidence or comment on whether Plaintiff's impairments equaled the criteria of a Listed Impairment.

        C.      **The ALJ's Analysis Related to Dr. Radovsky**

Plaintiff argues the ALJ erred in his assessment of the medical opinion provided by Plaintiff's treating physician, Dr. Laurie Radovsky, M.D.  Dr. Radovsky completed a Medical Source Statement form on August 21, 2018, in which she opined on Plaintiff's condition.  Among other things, she checked boxes indicating Plaintiff experienced muscle pain, impaired sleep, and "chronic fatigue," and indicated he could "only sit or

11

stand" for 15–20 minutes.  (R. 933.)  Dr. Radovsky checked boxes to indicate he could "rarely" lift up to 10 pounds but never lift 20 or more pounds, and estimated he would miss work "4 or more days" per month and be "off task" approximately "25% or more" of the time.  (R. 933.)  Dr. Radovsky indicated the impairments began in February 2014 and, as of August 2018, would be expected to last for at least another 12 months.  (R. 933.)  Dr. Radovsky also completed a mental functioning questionnaire on November 26, 2018, in which she assessed Plaintiff as having "moderate," "marked," and some "extreme" limitations in his ability to perform certain tasks.  (R. 955–56.)

The ALJ assigned Dr. Radovsky's opinions "some weight" based on her "brief treatment of the claimant," and because "her conclusions were not supported by any objective findings or signs, and the extreme limitations she opined were not consistent with the very limited objective findings or the course of treatment reflected in the longitudinal record."  (R. 38.)  The ALJ noted that Dr. Radovsky's own records showed Plaintiff's symptoms responded to treatment "despite [Plaintiff's] lack of full compliance with her recommended treatment regime," and noted that Dr. Radovsky's opinion was consistent with Plaintiff's subjective reporting as to his own limitations, but was not otherwise supported.  (R. 38.)  As to Dr. Radovsky's opinions on Plaintiff's mental functioning, the ALJ accounted in his RFC for Plaintiff's moderate limitations in concentrating, persisting, and maintaining pace, but concluded that the Plaintiff's ability to drive and perform other activities of daily living did not support a finding of greater limitations.  (R. 38.)

The opinion of a treating medical source should be considered controlling if the

opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *Dolph v. Barnhart*, 308 F.3d 876, 878 (8th Cir. 2002). But a "treating physician's opinion does not automatically control, since the record must be evaluated as a whole." *Bentley v. Shalala*, 52 F.3d 784, 786 (8th Cir. 1995) (internal quotations and alterations removed). An ALJ may discount a medical opinion if it is inconsistent with other substantial evidence, such as "where other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions." *Prosch*, 201 F.3d at 1013 (citations omitted); *see also Goff v. Barnhart*, 421 F.3d 785, 790–91 (8th Cir. 2005).

Plaintiff's primary challenge to the ALJ's determination is that the ALJ characterized Dr. Radovsky's treatment history with Plaintiff as "brief." Plaintiff represents that in fact he had "ten encounters" with Dr. Radovsky over a twelve-month period, which is "far more than any other medical source in the record." (Pl.'s Mem. Supp. Mot. Summ. J. at 12.) From this statement, Plaintiff concludes the ALJ had likely "not reviewed the entire record when he concluded that the opinions [Dr. Radovsky] expressed were unsupported." (*Id.* at 13.) The Court disagrees. Although the Court cannot speak for the ALJ's word choice, it is clear from the ALJ's analysis of the record that the ALJ was well-acquainted with the records of Plaintiff's visits to Dr. Radovsky. (*See* R. 29–31, 36–38 (referencing specific findings, courses of treatment, and conversations between Plaintiff and Dr. Radovsky).)

Moreover, the Court does not conclude that the ALJ's weighting of Dr. Radovsky's opinion was erroneous. The ALJ noted that Dr. Radovsky's "own records showed [Plaintiff's] improvement in the tremors, fatigue, cognitive complaints, and dizziness/lightheadedness despite a lack of full compliance with her recommended treatment regime." (R. 38.) An ALJ may properly consider Plaintiff's failure to follow his doctor's recommended treatment. *See Roth*, 45 F.3d at 282 ("Failure to follow a prescribed course of remedial treatment without good reason is grounds for denying an application for benefits.").

The ALJ also discounted Dr. Radovsky's opinion because her conclusions and opinions about Plaintiff's limitations were inconsistent with the record and not supported by objective findings. (R. 38.) For example, although Dr. Radovsky opined that Plaintiff had "moderate," "marked," and "extreme" limitations in his mental functioning (R. 955–56), a neuropsychological evaluation by a different physician in February 2017 found that Plaintiff's overall intellectual functioning was above average and his attention, executive function, and memory levels were all "within normal limits," such that the test did not indicate significant cognitive issues, although it did suggest "fairly high levels of anxiety and depression." (R. 585.) Indeed, as the ALJ commented, Dr. Radovsky's opinions were also not consistent with *her own treatment records*, which described various improvements in Plaintiff's condition at different times. (*See, e.g.*, R. 937 (Plaintiff's brain fog, tremor, and lightheadedness were improving), R. 939 (Plaintiff's "brain was clearing and his seizure-like activity stopped . . . his joint pain got a lot better" and he "began feeling a lot better in general"), R. 941 (Plaintiff's "restless leg syndrome and the

14

seizure-like activity both resolved . . . and have not come back" and his "headaches and sleep are a little better").)  The ALJ can reject a treating physician's opinion that is inconsistent with the record.  *See Juszczyk v. Astrue*, 542 F.3d 626, 632 (8th Cir. 2008).

Furthermore, the ALJ noted that Dr. Radovsky's opinions were inconsistent with Plaintiff's activities of daily living, such as driving, cooking, cleaning, and attending sporting events.  (*See* R. 38, 351–353.)  The ALJ may discount a treating physician's opinion that is inconsistent with the claimant's activities of daily living.  *See Crawford v. Colvin*, 809 F.3d 404, 409 (8th Cir. 2015) (finding the ALJ did not err in failing to rely on a medical opinion that was inconsistent with the plaintiff's ability to perform normal daily activities).

Finally, the ALJ noted that Dr. Radovsky provided little support for the proffered limitations, saying, "[Dr. Radovsky's] opinion was consistent with [Plaintiff's] subjective reporting about his limits but she listed only symptoms and did not provide any further support for the extreme limits she opined."  (R. 38.)  An ALJ may reject a physician's opinion when it is not consistent with the objective medical evidence.  *See Wright v. Colvin*, 789 F.3d 847, 853 (8th Cir. 2015); *see also* 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3) ("The more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight we will give that medical opinion.")  Dr. Radovsky's opinions were conveyed via simple check-the-box forms, which the Eighth Circuit has criticized as being of "little evidentiary value" when, as here, they cite no medical evidence and provide little to no elaboration.  *Thomas v. Berryhill*, 881 F.3d 672, 675 (8th Cir. 2018).

Accordingly, the Court concludes the ALJ properly weighed Dr. Radovsky's medical opinion evidence.

### D.   Plaintiff's Other Claims

Plaintiff concludes his memorandum in support of his motion by "stress[ing] that the above claims do not represent the entirety of the issues" he has with the ALJ's decision. (Pl.'s Mem. Supp. Mot. Summ. J. at 13.) He goes on to identify three more issues: (1) Dr. Frazin, the medical expert who testified at Plaintiff's hearing before the ALJ, "admitted in testimony that he is not qualified to evaluate any evidence about psychiatric disorders"; (2) Dr. Frazin "seemed unfamiliar with part of the record"; and (3) The ALJ discounted Plaintiff's testimony, as well as the testimony of Plaintiff's mother and her husband, about Plaintiff's symptoms and limitations. (*Id.* at 13–15.) Plaintiff states that he does not have "the capacity to develop all these arguments," but hopes that the issues could be raised on remand. (*Id.* at 15.) These "other issues" are not grounded in caselaw or accompanied by record citations.

Plaintiff bears the burden of developing his arguments and directing the Court to evidence in the record to support it. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986) (where the nonmoving party will bear the burden of proof at trial, it must point to facts showing that there is a genuine issue for trial in response to a motion for summary judgment); *United States v. Dunkel,* 927 F.2d 955, 956 (7th Cir.1991) ("Judges are not like pigs, hunting for truffles buried in [the record]."); *Binion v. City of St. Paul*, 788 F. Supp. 2d 935, 950 (D. Minn. 2011) ("This Court does not function as a research assistant for the parties."). Additionally, Plaintiff is apparently not seeking remand based on these

16

"other issues," but rather flagging them as topics he would like to explore at the administrative level, *should* remand be granted.  (Pl.'s Mem. Supp. Mot. Summ. J. at 15 ("I present them here to suggest that if my case is remanded, which I believe is required by careful consideration of sections (1) and (2) of this memorandum, other issues must be allowed to be raised.").)  Because the Court does not find an error in the ALJ's decision, remand is not appropriate here.  Accordingly, the addition of new claims that Plaintiff would like to raise before the ALJ if the matter were remanded is a moot issue.

### D.     Conclusion

The ALJ did not err in his analysis of Plaintiff's claims.  First, as to Plaintiff's claims regarding CFS, the Court finds that Plaintiff did not allege CFS in his application for benefits or during the hearing, and the sporadic references to fatigue or low energy levels are not sufficient to present a claim for CFS to the ALJ as a basis for disability.  Moreover, the ALJ followed the proper sequential analysis for assessing Plaintiff's claims, and he was not obligated to specifically reference SSR 14-1p in doing so.  Second, the Court concludes the ALJ's analysis at Step Three was sufficiently thorough to allow Plaintiff to have the information he needed to challenge the ALJ's decision.  The ALJ was not required to further develop evidence or offer commentary on whether Plaintiff's impairments equaled the criteria of a Listed Impairment.  Third, the Court concludes the ALJ was well-acquainted with Dr. Radovsky's treatment records and he properly weighed Dr. Radovsky's medical opinion evidence.  Because remand is not appropriate here, the ancillary arguments Plaintiff would like to raise on remand are moot.

Accordingly, based on all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Plaintiff Scott H.'s Motion for Summary Judgment [ECF No. 22] is **DENIED**; and

2. Defendant Andrew Saul's Motion for Summary Judgment [ECF No. 24] is **GRANTED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

Dated: June 10, 2021                                *s/ Hildy Bowbeer*
                                                                        HILDY BOWBEER
                                                                         United States Magistrate Judge